IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TRENCH TECH INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION _____ |
| | § | |
| TECH CON TRENCHING, INC., | § | |
| DAVID W. CONLON, JEREMY GILBERT | § | |
| d/b/a GILBERT CONSULTING AND | § | |
| DESIGN FIRM, NELSON LEWIS, INC., | § | |
| DIAMOND H. TRENCHING, INC., and | § | |
| JACK SMITH, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Trench Tech International, Inc. brings this suit against Defendants Tech Con Trenching, Inc., David W. Conlon, Jeremy Gilbert d/b/a Gilbert Consulting and Design Firm, Nelson Lewis, Inc., Diamond H. Trenching, Inc., and Jack Smith, and for causes of action respectfully shows the Court the following:

**I.
PARTIES**

1. Plaintiff Trench Tech International, Inc. ("Trench Tech") is a Texas corporation with its principal place of business located in Roanoke, Denton County, Texas.

2. Defendant Tech Con Trenching, Inc. ("Tech Con") is a Texas corporation with its principal place of business located in Johnson City, Blanco County, Texas. Tech Con may be served through its registered agent for service of process, Marc A. Jacobi, at 1991 Jung Lane, Fredericksburg, Texas 78624, or wherever he may be found.

3. Defendant David W. Conlon ("Conlon") is an individual resident of Johnson

County, Texas, who may be served with process at 863 Yentzen Ranch Road, Johnson City, Texas 78636, or wherever he may be found.

4. Defendant Jeremy Gilbert d/b/a Gilbert Consulting and Design Firm ("Gilbert") is an individual resident of Tarrant County, Texas, who may be served with process at 1605 Stoneway Drive, Grapevine, Texas 76051, or wherever he may be found.

5. Defendant Nelson Lewis, Inc. ("Nelson Lewis") is a Texas corporation with its principal place of business located in Marble Falls, Burnet County, Texas. Nelson Lewis may be served through its registered agent for service of process, Henry T. Lewis, at 450 FM 1431 East, P. O. 235, Marble Falls, Texas 78654, or wherever he may be found.

6. Defendant Diamond H. Trenching, Inc. ("Diamond H") is a Texas corporation with its principal place of business located in Ponder, Denton County, Texas. Diamond H may be served through its registered agent for service of process, Roger Hennen, at 4048 FM 156 S, Ponder, Texas 76259, or wherever he may be found.

7. Defendant Jack D. Smith ("Smith") is an individual resident of Denton County, Texas, who may be served with process at 5657 Turner Street, The Colony, Texas 75056, or wherever he may be found.

## II.
## JURISDICTION AND VENUE

8. This case involves claims for misappropriation of trade secrets relating to products used in, or intended for use in interstate commerce, arising under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et. seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

9. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Gilbert resides in the Northern District of Texas, and all defendants in this

action are residents of Texas.

## III.
## FACTUAL BACKGROUND

**A.    Trench Tech's Business and Trade Secrets**

10.    Trench Tech is an industry leader in the manufacturing of rugged, mechanically driven, chain-rock trenchers for cable, pipeline, water site development, and underground utility construction products.  Trench Tech also services and provides parts for the trenchers it manufactures.  Trench Tech's trenchers and parts have been used in interstate commerce across the United States since approximately 1997.  More specifically, Trench Tech has sold trenchers and/or parts in Texas, California, Arizona, New Mexico, Colorado, Utah, Nevada, Tennessee, Mississippi, Florida, Arkansas, Oklahoma, and Kansas.

11.    Trench Tech's engineers and design teams have developed designs for certain trenching machinery, trenching parts, and other specialty equipment.  Trench Tech's design team possesses more than fifty (50) years of experience in trenching by having studied and used trenching techniques and equipment across the world.  This experience has provided Trench Tech an advantage over its competitors, and has led to Trench Tech's in-depth understanding and expertise of how to create machinery that literally digs, cuts and trenches through hard-ground materials productively and cost-efficiently.  Trench Tech designs and develops its trenching equipment to perform at high levels with low maintenance requirements.  This information and Trench Tech's designs and related information (the "Design Secrets") constitute protectable trade secrets under the Defend Trade Secrets Act.  The Design Secrets can be used by a competitor to obtain an unfair competitive advantage in the trenching equipment and trenching parts business.

12.    Trench Tech provides its Design Secrets to its vendor manufacturers in order to manufacture the components of the trenching machinery and trenching parts.  However, prior to

disclosing its Design Secrets to a vendor manufacturer, Trench Tech obtains from its vendor manufacturer and its agents an agreement not to disclose its Design Secrets, and to keep them confidential.

13. The production of trenching machinery and trenching parts is a highly competitive business in which success depends almost entirely on information, designs, and research about trenching techniques and equipment development across the world. This competition and Trench Tech's experience have helped drive its in-depth understanding and expertise in how to design trenching machinery and trenching parts, including how to document and save information necessary to manufacture its trenching machinery and parts. Additionally, success in the competitive trenching manufacturing and trenching parts industry also depends on research about customers such as: customer lists; the identities of customer contracts; the identifies of and contact information for customer agents; pricing information; and information concerning the costs and expenditures associated with operating a trenching machinery and trenching parts production business. Success also depends on research about vendor manufacturers and service providers including contacts for vendors, vendor pricing, vendor terms, and vender capabilities. All these types of information, including its Design Secrets, constitute Trench Tech's confidential information ("Business Secrets"). If disclosed, Trench Tech's Business Secrets can be used by a competitor to obtain an unfair competitive advantage in the trenching machinery and trenching parts business.

14. Through its efforts over the years, Trench Tech has developed its substantial body of Business Secrets described above, which is indispensable to its business. This information is necessarily confidential in that it requires a substantial investment of time and resources to develop, and is not readily obtainable or easily discoverable from other sources. If disclosed to

competitors, Trench Tech's Business Secrets present substantial advantages to Trench Tech competitors, allowing them to compete unfairly against Trench Tech by stealing what took years of work and investment for Trench Tech to develop and nurture.

15. Trench Tech has taken reasonable measures to guard against disclosure of its Business Secrets, which could not be acquired in any way other than by extensive research efforts, the expenditure of large amounts of money, and years of experience. In light of these facts, Trench Tech's Business Secrets constitute protectable trade secrets under Texas and federal law.

**B.  Former Trench Tech Employees Gilbert and Smith Take Trench Tech's Trade Secrets and Use Them Without Trench Tech's Permission to Benefit Tech Con and Conlon**

16. Trench Tech is a family owned and operated business. Gilbert's father is the chief design engineer for Trench Tech. Gilbert's father and his uncle are officers and directors of Trench Tech. In addition, Gilbert's father and uncle own a majority interest in Trench Tech.

17. Gilbert began employment with Trench Tech on May 9, 2000. As a result of Gilbert's position of trust as a family member and employee, Gilbert had broad access to Trench Tech's Business Secrets, including specifically design drawings.

18. Gilbert resigned from employment with Trench Tech on August 3, 2012. When Gilbert resigned from Trench Tech, he wrongfully retained Trench Tech's Business Secrets on his personal computer without Trench Tech's knowledge or consent.

19. Following Gilbert's resignation from Trench Tech, Gilbert began working for Tech Con. Tech Con hired Gilbert at Conlon's direction in order to obtain access to Trench Tech's Business Secrets, including specifically its design drawings. Conlon and Tech Con knew that Gilbert was employed by Trench Tech and knew of the relationship of trust that exists in family businesses such as Trench Tech. Conlon and Tech Con knew that Gilbert was not a design

engineer and did not have the capability to design and engineer parts for the machines manufactured by Trench Tech. Conlon and Tech Con also knew that Gilbert did not own the confidential drawings, designs, and other Business Secrets of Trench Tech, and had obtained such information through improper means.

20. Gilbert provided Trench Tech's Business Secrets to Tech Con and Conlon. Beginning in 2017, Gilbert sold to Tech Con frames for Trench Tech Model 2000 trenchers, and charged a "product consulting fee" for providing the confidential drawings, designs, and trade secrets to Tech Con for each frame. Tech Con also paid Gilbert a consulting fee to have the Trench Tech drawings, designs, and trade secrets converted to a three dimension design model in order to allow for the production of each of the frames for a Trench Tech Model 2000 trencher.

21. Smith was employed by Trench Tech as a design engineer from January 6, 2003 through April 13, 2009. As an employee of Trench Tech, Smith designed parts and generated technical drawings for Trench Tech parts. In order to perform his job, Smith had access to almost all of Trench Tech's Business Secrets, including specifically its design drawings. Although Smith claims that he returned Trench Tech's designs when he ceased working for Trench Tech, Smith wrongfully retained Trench Tech's Business Secrets without Trench Tech's knowledge or consent. Smith provided such Business Secrets to Tech Con and Conlon. Smith has also attempted to conceal the use of Trench Tech's Business Secrets, but the designs and drawings provided by Smith to third parties were clearly derived from Trench Tech's Business Secrets, and not through reverse engineering. Smith provided Trench Tech's Business Secrets to Tech Con and Conlon.

22. Conlon and Tech Con knew that Smith did not prepare the designs and drawings without the use of Trench Tech's Business Secrets acquired by improper means.

C. **While an Agreed Permanent Injunction Prevented the State Court Defendants (defined below) from Selling Trench Tech Parts, Tech Con, Nelson Lewis, and Diamond H Purchased Trench Tech Parts from the State Court Defendants with Full Knowledge of the Agreed Permanent Injunction**

23. On or about August 16, 2012, Trench Tech and Harold Randolph Lennard, Jr., Ronald Lynn Perdue, C.R.P. Machine & Welding, Inc. and Conex Equipment Manufacturing, LLC (collectively referred to as the "State Court Defendants") entered into a Compromise and Settlement Agreement (the "Agreement") with regards to Cause No. 348-251999-11 filed in the 348th Tarrant County District Court (the "Lawsuit"). The Agreement provided that the State Court Defendants would not market or sell a machine part that is unique and specific to Trench Tech trenching machines for a period of five (5) years. The Agreement also provided for the entry of a Permanent Injunction prohibiting the State Court Defendants from directly or indirectly marketing, manufacturing, or selling parts that are unique to and specifically for machines manufactured by Trench Tech.

24. On or about January 23, 2013, an Agreed Permanent Injunction was signed by the State District Court prohibiting the State Court Defendants from directly or indirectly marketing, manufacturing, or selling parts that are unique to and specifically for machines that have been manufactured by Trench Tech for a period of five (5) years. The Agreed Permanent Injunction also prohibited the State Court Defendants from directly or indirectly disclosing to any third party any of Trench Tech's confidential information, trade secrets, and/or proprietary information, including but not limited to Trench Tech's designs and specifications.

25. Tech Con, Conlon, Diamond H, and Nelson Lewis knew of the restrictions placed upon the State Court Defendants by the Agreement and the Agreed Permanent Injunction. Tech Con, Conlon, Diamond H, and Nelson Lewis purchased from the State Court Defendants parts that were unique to and specifically for machines manufactured by Trench Tech.

## IV.
## CAUSES OF ACTION

**A.  Violation of Defend Trade Secrets Act (Against Tech Con, Conlon, Gilbert, and Smith)**

26. As described above, Trench Tech created and owned multiple trade secrets relating to the design, manufacture, use and sale of trenching machinery and trenching parts.

27. Tech Con, Conlon, Gilbert, and Smith willfully and maliciously acquired, disclosed, or used Trench Tech's trade secrets through improper means.

28. Trench Tech has been harmed as a result of Tech Con, Conlon, Gilbert, and Smith's misappropriation of its trade secrets. Trench Tech is entitled to recover damages consisting of both the lost profits Trench Tech would have earned but for Tech Con, Conlon, Gilbert, and Smith's misappropriation, and the value of what Tech Con, Conlon, Gilbert, and Smith gained through their misappropriation.

29. Because Trench Tech's trade secrets were willfully and maliciously misappropriated, Trench Tech seeks an award of exemplary damages in an amount of not more than two times the amount of actual damages awarded pursuant to 18 U.S.C. § 1836(b)(3)(C).

30. Because Trench Tech's trade secrets were willfully and maliciously misappropriated, Trench Tech also seeks its costs and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(d).

**B.  Conspiracy to Misappropriate Trade Secrets (Against Tech Con, Conlon, Gilbert, and Smith)**

31. Tech Con, Conlon, Gilbert, and Smith sought to misappropriate Trench Tech's trade secrets, and they reached a meeting of the minds regarding misappropriating Trench Tech's trade secrets. Tech Con, Conlon, Gilbert, and Smith participated in one of more unlawful, overt acts taken in pursuit of the misappropriation of Trench Tech's trade secrets—namely: (1) Tech

Con and/or Conlon asked Gilbert and Smith to take Trench Tech's trade secrets without Trench Tech's authorization; (2) Gilbert and/or Smith took Trench Tech's trade secrets without Trench Tech's authorization; and (3) Tech Con used Trench Tech's trade secrets without Trench Tech's authorization to further Tech Con's business.  Trench Tech has suffered damages as a proximate result of Tech Con, Conlon, Gilbert, and Smith's conspiracy to misappropriate Trench Tech's trade secrets.  Tech Con, Conlon, Gilbert, and Smith should be held jointly and severally liable for all acts done by any of them in furtherance of their conspiracy to misappropriate Trench Tech's trade secrets.

C.   **Breach of Fiduciary Duty (Against Gilbert and Smith)**

32.   As former employees of Trench Tech, Gilbert and Smith owed Trench Tech certain fiduciary duties relating to Trench Tech's Business Secrets.

33.   Gilbert and Smith breached their fiduciary duties owed to Trench Tech by divulging Trench Tech's Business Secrets to third parties, including Trench Tech's competitors.

34.    Trench Tech has been damaged as a result of Gilbert and Smith's breach of their fiduciary duties.  Moreover, Gilbert and Smith have benefited by breaching their fiduciary duties owed to Trench Tech.

D.   **Conspiracy to Breach Fiduciary Duty (Against Tech Con, Conlon, Gilbert, and Smith)**

35.   Tech Con and Conlon sought to have Gilbert and Smith breach their fiduciary duties owed to Trench Tech, and they reached a meeting of the minds regarding this breach of fiduciary duties.  As such, Tech Con, Conlon, Gilbert, and Smith participated in one of more unlawful, overt acts taken in pursuit of Gilbert and Smith's breaches of fiduciary duties, namely: (1) Tech Con and/or Conlon asked Gilbert and Smith to breach their fiduciary duties owed to Trench Tech by taking Trench Tech's Business Secrets without Trench Tech's authorization; and (2) Gilbert and/or

Smith breach their fiduciary duties owed to Trench Tech by taking Trench Tech's Business Secrets without Trench Tech's authorization. Trench Tech has suffered damages as a proximate result of Tech Con, Conlon, Gilbert, and Smith's conspiracy to have Gilbert and Smith breach their fiduciary duties owed to Trench Tech. Tech Con, Conlon, Gilbert, and Smith should be held jointly and severally liable for all acts done by any of them in furtherance of their conspiracy to have Gilbert and Smith breach their fiduciary duties owed to Trench Tech.

**E.     Tortious Interference with Existing Contract (Against Tech Con, Diamond H, and Nelson Lewis)**

36.     The Agreement and the Permanent Injunction prevented the State Court Defendants from selling Trench Tech parts. The Agreement and the Agreed Permanent Injunction constitute valid contracts entered into by Trench Tech.

37.     Despite knowing of the Agreement and the Agreed Permanent Injunction and their requirement that the State Court Defendants not sell Trench Tech parts, Tech Con, Diamond H, and Nelson Lewis willfully and intentionally interfered with the Agreement and the Agreed Permanent Injunction by purchasing Trench Tech parts from the State Court Defendants.

38.     Tech Con, Diamond H, and Nelson Lewis's interference with the Agreement and the Agreed Permanent Injunction has proximately caused damages to Trench Tech.

## V.
## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE TO ALL DEFENDANTS

39.     This is to notify you that you must retain and preserve all documents, tangible things (including machines and/or machine parts), and electronically stored information potentially relevant to the issues in this cause. Electronically stored information should be afforded the broadest possible definition and includes, but is not limited to: (1) emails; (2) voicemails; (3) text messages; (4) word-processed documents; (5) spreadsheets; (6) accounting application data;

(7) image and facsimile files; and (8) computer-aided design (CAD) files.  **<u>Failure to preserve these materials will result in a request for a spoliation instruction at any trial in this matter, and may ultimately be considered by a court as an attempt to destroy evidence.</u>**

## VI.
## PRAYER

WHEREFORE, Trench Tech prays that this Court enter judgment for it and order the following relief against Defendants:

a)  actual damages;

b)  the lost profits Trench Tech would have earned but for Tech Con, Conlon, Gilbert, and Smith's misappropriation of Trench Tech's trade secrets together with the value of what Tech Con, Conlon, Gilbert, and Smith gained through their misappropriation pursuant to 18 U.S.C. § 1836(b)(3)(B);

c)  exemplary damages in an amount not more than two times the amount of damages awarded to Trench Tech under 18 U.S.C. § 1836(b)(3)(B);

d)  prejudgment interest as provided by law;

e)  post judgment interest as provided by law;

f)  attorneys' fees;

g)  all costs incurred in prosecuting this action; and

h)  such other and further relief, general or special, whether at law or in equity, to which Trench Tech may be justly entitled.

Respectfully submitted,

By: /s/*Kelly J. Curnutt*
  Kelly J. Curnutt
  State Bar No. 00787316
  KCurnutt@CurnuttHafer.com
  Logan W. Simmons
  State Bar No. 24060609
  LSimmons@CurnuttHafer.com

Curnutt & Hafer, L.L.P.
101 East Park Row
Arlington, TX 76010
(817) 548-1000 - Telephone
(817) 548-1070 - Facsimile

*ATTORNEYS FOR PLAINTIFF*